UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRAVARIS T. GUY, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>KIMBERLY BUTLER, Warden, )<br>)<br>Respondent. ) | No. 14 C 08581<br><br>Chief Judge Rubén Castillo |

## MEMORANDUM OPINION AND ORDER

Travaris Guy ("Petitioner"), a *pro se* prisoner, is serving a combined 60-year sentence for

second-degree murder and attempted first-degree murder committed in Will County, Illinois. He

filed a petition pursuant to 28 U.S.C. § 2254 (the "Petition") challenging his conviction. (R. 1,

Pet.) For the reasons stated below, the Court denies the Petition and declines to issue a certificate

of appealability.

## BACKGROUND[1]

On November 1, 2002, Petitioner was charged with the first-degree murder of David L.

Woods ("Woods") and the attempted first-degree murder of Sheena Woods ("Sheena"). (R. 21-1,

Criminal Compl. at 2-3.) Earlier that day, Petitioner had shot both victims while their cars were

stopped at a traffic light in downtown Joliet, Illinois. (R. 21-9, Ill. App. Ct. Order at 3-4.)

Although Petitioner claims that his shots were fired wildly in fear of his life,[2] (R. 21-5, *Pro Se*

---

[1] In reviewing a petition for federal habeas corpus relief, the Court must presume that the state
court's factual determinations are correct unless Petitioner rebuts those facts by clear and
convincing evidence. 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir.
2002).

[2] Petitioner's family and the Woods family had been engaged in a cycle of retributive violence,
which the trial judge described as "Joliet's answer to the Hatfields and the McCoys." (R. 21-6,
Tr. at 226).

Post-Conviction Pet. at 150), he has at no point in these proceedings denied that he fired a gun into the Woods's van or that these shots killed Woods and injured Sheena, (R. 21-5, Ct. Order at 221-23). Shortly after the shooting, Petitioner's co-defendant Corzell Cole ("Cole"), who drove the vehicle Petitioner was in when he shot the victims, was arrested, convicted, and given a 50-year sentence. (R. 21-9, Ill. App. Ct. Order at 2.) Petitioner, meanwhile, fled the state and was apprehended in Atlanta, Georgia, on January 15, 2004. (R. 21-7, Tr. at 34.)

The evidence adduced at Petitioner's 2005 jury trial[3] showed that on the morning of November 1, 2002, Woods, his daughter Sheena, his nephew David A. Woods ("David"), and his nephew's girlfriend Constance Daniels went shopping. (R-21-9, Ill. App. Ct. Order at 3.) Woods drove the group in his van with David in the front passenger seat, Sheena behind the driver's seat, and Constance in the seat behind David. (*Id.*) According to Sheena's testimony, Constance stated "there they go" while Woods was stopped at a red light on Midland Street. (*Id.*) Sheena testified that she saw a silver Malibu to the left of the van, its front even with the middle of the van, driven by Cole with Petitioner in the passenger seat. (*Id.*) Sheena testified that Woods opened the door to see who was in the car because the front window was inoperable, at which point Sheena witnessed Petitioner firing a gun. (*Id.*) Woods then fell back into the van, bleeding, before Sheena herself was shot. (*Id.*) David took the wheel and drove the van toward the hospital. (*Id.*) Constance and David testified similarly to Sheena, although neither remembered

---

[3] Petitioner's counsel filed a pretrial motion to dismiss or exclude evidence based on the Joliet Police Department's destruction of the Woods's van, which had been seized, examined, photographed, released, and subsequently destroyed, on due process grounds. (R. 21-2, Mot. to Dismiss at 14-15; R. 21-6, Tr. at 167-92.) The trial court denied Petitioner's motion, finding that the police had not released the van in bad faith, the van contained no apparent exculpatory evidence, photographic evidence of the van was available, and the van's destruction had caused no harm to Petitioner's defense. (R. 21-6, Tr. at 195-96.) Also prior to trial, Petitioner filed a flurry of *pro se* motions without the consent or subsequent adoption of his counsel. (*See, e.g.*, R. 21-1, Mot. to Substitute at 239; R. 21-1, Mot. for New Representation at 221-23; R. 21-1, Mot. to Dismiss at 191-94; R. 21-1, Mot. to Bar Test. at 231-35.)

Woods opening the van door. (*Id.* at 4.) David also testified that no one in the van had a gun at the time of the shooting. (*Id.*)

A forensic pathology expert who performed the autopsy of Woods testified that he found a single gunshot wound with a trajectory consistent with a bullet fired at an angle into the van. (*Id.*) A crime scene technician also testified that he swabbed Woods's hands to test for any gunshot residue that is left after firing a gun. (*Id.* at 6-7.) A trace evidence analyst, who had not performed the gunshot residue analysis but had in keeping with laboratory procedure reviewed the testing trace evidence analyst's report detailing her analysis, testified that the unavailable testing analyst, who was unavailable to testify, had followed the proper procedure. (*Id.* at 8.) Berk reported that the test had shown no gunshot residue on either hand. (*Id.* at 8-9.) The State also introduced evidence that on three separate occasions the gun used to kill Woods was fired at other members of the Woods family; the defense agreed to introduce this evidence by stipulation. (*Id.* at 9.)

Richard Trafton ("Trafton"), the evidence technician who processed the scene of the shooting and the van, also testified. (*Id.* at 5.) Trafton has extensive training in the field of evidence collection, preservation, processing, and documentation, although he is not a ballistics expert. (*Id.*) Trafton testified regarding items he observed in the van, photographs of the interior and exterior of the van, and the state and location of multiple bullet holes in the side of the van. (*Id.* at 5-6.)

Petitioner testified on his own behalf. (*Id.* at 7.) He stated that on the evening of October 31, 2002, his cousin Ronald Guy ("Ronald") had given him a gun that he had never seen before. (*Id.*) According to Petitioner, Ronald had been embroiled in a series of confrontations with the Woods family, had recently been shot at, and knew that Petitioner was going to his girlfriend's

house down the street from the Woods's home. (*Id.*) He claimed that on November 1, 2002, Cole picked Petitioner up in a silver Malibu. (*Id.*) At Midland Street, they pulled into the left turn lane and, while waiting for the traffic light to change, saw Woods pull up in the far right lane in his van. (*Id.* at 7-8.) Petitioner testified that Woods looked at him angrily and the van jerked as if it had been moved into park. (*Id.* at 8.) According to Petitioner, Woods opened his door all the way and pulled out a silver gun. (*Id.*) Cole screamed at Petitioner to get down; Petitioner ducked, drew his gun, and began firing blindly. (*Id.*) He fired three or four shots before Cole drove out of the intersection. (*Id.*) Petitioner testified that he was nervous when he saw Woods pull up at the intersection because of Woods's reputation for violence and a number of shootings between their two families. (*Id.*) He further testified that, when he saw Woods emerge from the van with something silver, he believed that he would be shot or killed. (*Id.*)

After deliberation, the jury found Petitioner guilty of attempted first-degree murder of Sheena and second-degree murder of Woods.[4] (*Id.* at 9.) Petitioner's motion for a new trial was denied and, on July 28, 2005, he was sentenced to two consecutive sentences of 30 years. (*Id.*) On August 12, 2005, Petitioner filed a *pro se* post-conviction petition raising many claims, including claims of ineffective assistance of counsel. (*Id.* at 9.)

Petitioner filed a direct appeal through appointed counsel, raising four claims: (1) the trial court erred in failing to bar evidence concerning the van due to a violation of state law regarding preservation of evidence; (2) the trial court erred in allowing Trafton's improper lay opinion testimony; (3) the trial court erred in allowing the State to present over defense objection rebuttal evidence concerning the results of gunshot residue testing and unrelated shootings committed

---

[4] Illinois's second-degree murder statute defines the crime as first-degree murder with the mitigating factor of an unreasonable belief that self-defense was justified. 720 ILL. COMP. STAT. 5/9-2(a)(2).

4

with the gun when this evidence did not contradict any evidence presented during the defendant's case in chief; and (4) the trial judge failed to investigate Petitioner's *pro se* post-trial motion alleging ineffective assistance of counsel. (R. 21-10, Def.'s Br. at 2-3.) The Illinois Court of Appeals noted that Petitioner's first two arguments regarding evidence of the van and Trafton's testimony were raised for the first time on appeal, with Petitioner abandoning his previous due process objections to the same evidence. (R. 21-9, Ill. App. Ct. Order at 10-12; *see also* R. 21-10, Def.'s Br. at 29, 36.) Ultimately, the court rejected all four arguments and affirmed Petitioner's convictions in all respects. (R. 21-9, Ill. App. Ct. Order at 15.) On Petitioner's motion, the Illinois Appellate Court granted rehearing but adhered to its previous judgment. (R. 21-14, Ill. App. Ct. Order at 41-43.) Petitioner then filed a petition for leave to appeal ("PLA") to the Illinois Supreme Court, reasserting claims (1), (2), and (4) from his direct appeal but abandoning claim (3) regarding rebuttal evidence. (R. 21-14, PLA at 3.) His PLA was denied, but the Illinois Supreme Court issued a supervisory order directing the appellate court to remand Petitioner's *pro se* motion to the trial court for an examination of his claims of ineffective assistance of trial counsel on the merits. (R. 21-13, Ill. Order at 1-2.)

Upon remand, the trial court held a two-day hearing with Petitioner and his trial counsel to inquire into the allegations in Petitioner's lengthy amended *pro se* motion. (R. 21-15, Ill. App. Ct. Order at 4.) The trial court ultimately denied the motion. (*Id.* at 5.) Petitioner appealed to the Illinois Appellate Court, arguing that the trial judge abused his discretion in denying Petitioner's *pro se* motion without appointing new counsel to represent him in connection with the motion. (R. 21-16, Def.'s Br. at 4.) The appellate court held that Petitioner's allegations did not require appointment of counsel because they concerned trial strategy and tactics. (R. 21-15, Ill. App. Ct. Order at 8.) Petitioner, now proceeding *pro se*, filed a second PLA to the Illinois Supreme Court

reasserting his claims that the trial court erred in admitting evidence of the van, Trafton's lay opinion testimony, and rebuttal evidence concerning gunshot residue analysis and other shootings committed with the same gun; he also reasserted his claim that the trial court abused its discretion by failing to appoint counsel for its investigation into ineffective assistance of counsel at trial. (R. 21-20, PLA at 2.) His PLA was denied. (R. 21-19, Ill. Order at 1.)

On November 7, 2011, Petitioner filed a *pro se* post-conviction petition with the trial court, alleging ineffective assistance of trial counsel, ineffective assistance of appellate counsel for failing to argue instances of trial counsel's ineffectiveness, newly discovered evidence, and actual innocence. (R. 21-5, *Pro Se* Post-Conviction Pet. at 140.) The court denied the petition in all respects, finding the ineffective assistance allegations to be settled and meritless, the newly discovered evidence to be cumulative, and the actual innocence claim to be foreclosed by Petitioner's admission that he shot Woods and Sheena. (R. 21-5, Ct. Order at 221-23.) Petitioner appealed and was appointed counsel; after examining Petitioner's claims, appellate counsel filed a motion to withdraw, arguing that any potential issues for appeal would be without arguable merit. (R. 21-22, Mot. for Leave to Withdraw at 18.) The Appellate Court of Illinois permitted counsel's withdrawal and affirmed the trial court's judgment. (R. 21-21, Ill. App. Ct. Order at 3.) Petitioner filed a *pro se* PLA to the Illinois Supreme Court. (R. 21-25, PLA.) His PLA was denied. (R. 21-24, Ill. Order.)

On October 29, 2014, Petitioner filed the present *pro se* petition under 28 U.S.C. § 2254. (R. 1, Pet.) On the same day, Petitioner filed a motion to stay the petition until the resolution of his motion for relief from judgment, which was pending in the Circuit Court of Will County.[5] (R.

---

[5] Petitioner further requested in the same motion that his § 2254 petition be stayed "until his Successive Post-Conviction Petition is fully and properly exhausted in the State Courts," noting that he intended to exhaust claims that had not been properly exhausted already. (R. 4, Mot. to

4, Mot. to Hold and Stay in Abeyance.) This motion was later denied for failure to properly serve

the State and for untimeliness. (R. 21-27, Ct. Order.) Petitioner raises numerous claims that are

voluminously asserted but not clearly stated or distinctly separated. However, this Court has

made every effort to construe the *pro se* petition liberally, *see Perruquet v. Briley*, 390 F.3d 505,

512 (7th Cir. 2004), and summarizes Petitioner's claims as follows: (1) the trial court abused its

discretion by allowing the introduction of evidence concerning the condition of the van after its

destruction in violation of Illinois state law; (2) the trial court committed plain error by allowing

Trafton's lay witness opinion testimony; (3) Petitioner was deprived of his right to a fair trial

when the prosecution presented rebuttal evidence concerning the results of gunshot residue tests

and other shootings committed with the same gun; (4) the trial court ignored his allegations of

ineffective assistance of counsel; (5) the trial court abused his discretion in rejecting Petitioner's

ineffective assistance of counsel claims without appointing separate counsel to represent him in

connection with these claims; (6) trial counsel was ineffective for failing to sufficiently present

Petitioner's affirmative defense of self-defense; (7) appellate counsel was ineffective for failing

to raise the claim of ineffective assistance of trial counsel; (8) Petitioner is actually innocent

based on self-defense; (9) the Illinois second-degree murder statute is inconsistent and

unconstitutionally vague; (10) the Illinois second-degree murder statute unconstitutionally

requires the criminal defendant to disprove an element of first-degree murder; (11) the jury

instructions were defective as they allowed the jury to reach inconsistent findings that Petitioner

intended to kill Woods and that he held an unreasonable belief that self-defense was justified;

(12) the jury failed to identify which elements of the charged crimes it found had been proven at

trial; (13) the Illinois attempt statute is unconstitutionally vague and inconsistent with the first-

---

Hold and Stay in Abeyance at 3.) However, there is nothing before the Court to show that
Petitioner has actually filed such a successive petition. (R. 21-26, Docket.)

and second-degree murder statutes; (14) Petitioner's sentence of 30 years for attempted first-degree murder is excessive under Illinois state law; and (15) Petitioner's convictions and sentences violate Illinois's one act/same conduct doctrine. (R. 1, Pet. at 8-16.) Kimberly Butler, the warden of Menard Correctional Center ("Respondent"), answered the petition on April 15, 2015. (R. 20, Answer.)

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Violations of state law are noncognizable on federal habeas review unless these violations themselves infringe upon the petitioner's federal rights. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Earls v. McCaughtry*, 379 F.3d 489, 495 (7th Cir. 2004) (federal habeas court cannot "second-guess state courts in interpreting state law"). To obtain relief, a petitioner must show that the state court's proceedings:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under this deferential standard, the Court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). "[C]learly

8

established Federal law" under section 2254(d)(1) "consists of 'the holdings, as opposed to the dicta,'" of the Supreme Court's cases. *Wong v. Smith*, 131 S. Ct. 10, 11 (2010) (quoting *Williams*, 529 U.S. at 412). A state court decision is contrary to federal law if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court or reaches an opposite result in a case involving facts materially indistinguishable from relevant U.S. Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002). The Court may grant habeas relief under the "unreasonable application" clause if the state court identifies the correct legal principle from U.S. Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). The state court's decision must be more than incorrect or erroneous; it must be "objectively" unreasonable. *Id.* This is a difficult standard to meet: "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). To obtain relief, a habeas petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

Before a district court can consider a petitioner's claims, the petitioner must "exhaust[ ] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). In other words, a petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Johnson v. Pollard*, 559 F.3d 746, 751 (7th Cir. 2009) (alteration in original) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010) ("As part of this requirement, a petitioner must have fairly presented both the operative facts and legal

principles that control each claim to the state judiciary."). This means that a petitioner must give

state courts an opportunity to resolve his constitutional claims "by invoking one complete round

of the state's established appellate review process." *Byers v. Basinger*, 610 F.3d 980, 985 (7th

Cir. 2010) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). To do so, a petitioner

must "present both the operative facts and the legal principles that control each claim" at each

level of state review. *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007) (citation omitted).

This includes presenting the claim in a petition for discretionary review with the Illinois Supreme

Court. *Boerckel*, 526 U.S. at 845-47. "[W]hen a petitioner has exhausted his state court remedies

and failed to properly assert his federal claims at each level of review those claims are

procedurally defaulted." *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009). "A procedural

default also occurs when a state court disposes of a claim on an independent and adequate state

law ground." *Johnson v. Loftus*, 518 F. 3d 453, 455 (7th Cir. 2008) (citing *Coleman v.

Thompson*, 501 U.S. 722, 730 (1991)). Procedural default precludes federal court review of a

petitioner's habeas claim. *Johnson*, 559 F.3d at 752.

A petitioner may overcome procedural default by demonstrating cause for the default and

actual prejudice caused by the alleged violation of federal law, or by showing that the court's

failure to consider the claim would result in a fundamental miscarriage of justice. *Smith*, 598

F.3d at 382. Cause sufficient to excuse a procedural default is defined as "some objective factor

external to the defense" which prevented a petitioner from pursuing his constitutional claim in

state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice in this context "means an

error which so infected the entire trial that the resulting conviction violates due process."

*Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013) (citation omitted). A fundamental

miscarriage of justice occurs when a petitioner establishes that "a constitutional violation has

probably resulted in the conviction of one who is actually innocent[.]" *Coleman*, 501 U.S. at 748

(quoting *Murray*, 477 U.S. at 496); *see also McQuiggin v. Perkins*, 133 S. Ct. 1924, 1933 (2013)

("The miscarriage of justice exception . . . applies to a severely confined category: cases in

which new evidence shows 'it is more likely than not that no reasonable juror would have

convicted [the petitioner].'" (quoting *Schlupv. Delo*, 513 U.S. 298, 329)).

## ANALYSIS

### I. Claims One and Two

Petitioner first claims that the trial judge's admission of evidence concerning the

destroyed van constituted an abuse of discretion and that his permission for Trafton to testify as a

lay witness regarding the trajectories of bullets constituted plain error. (R. 1, Pet. at 8.)

Respondent argues that these claims are noncognizable as they allege only violations of state law

and, alternatively, that they are forfeited because Petitioner failed to object at trial and in a

posttrial motion. (R. 20, Answer at 21-23.)

The claims as presented in the Petition are unavailing on federal habeas review as they

concern only errors of state law without a federal constitutional deprivation.[6] Concerning the

van, Petitioner claims a violation of 725 Ill. Comp. Stat. 5/116-4(a), which requires police to

preserve all physical evidence in its possession that is reasonably likely to contain "forensic

evidence." (R. 1, Pet. at 8.) Similarly, the violation of the state's bar on lay opinion testimony,

even if it is based upon the state's adoption of the federal rule on point, is an error of state, not

---

[6] Petitioner and his counsel separately filed pretrial motions challenging the introduction of
evidence regarding the physical condition of the van at trial, arguing that it violated the right to
due process. (R. 21-1, Motion to Bar Test. at 231-35; R. 21-2, Mot. to Dismiss at 14.) This claim
was abandoned on direct appeal, (R. 21-10, Def.'s Br. at 29), and in Petitioner's PLA to the
Illinois Supreme Court, (R. 21-14, PLA at 13-14). More fundamentally, this due-process
formulation of this claim is not presented in Petitioner's instant § 2254 motion. *See* RULES
GOVERNING SECTION 2254 CASES IN THE U.S. DIST. COURTS 2.

federal, law. *See Buie v. McAdory*, 341 F.3d 623, 625 (7th Cir. 2003) ("The Constitution does not impose [the Federal Rules of Evidence] on the states[.]"). Ultimately, "an error of state evidence law cannot be the basis of federal collateral relief." *Id.* "Violations of state laws are cognizable only if they resulted in fundamental unfairness and consequently violate a petitioner's constitutional rights." *Lechner v. Frank*, 341 F.3d 635, 642 (7th Cir. 2003). The violations at issue here resulted in no fundamental unfairness: an evidentiary mistake leads to fundamental unfairness only when the error "produced a significant likelihood that an innocent person has been convicted." *Howard v. O'Sullivan*, 185 F.3d 721, 724 (7th Cir. 1999). As the appellate court noted, "[Petitioner] admitted that he shot at Woods; he did not deny that a bullet he fired resulted in the death of Woods." (R. 21-9, Ill. App. Ct. Order at 11.) The significance of the van and Trafton's testimony rests on how it supports or undermines Petitioner's claim of self-defense. This Court finds that this evidence did not likely lead to the conviction of an innocent person; it was probably not a crucial factor in the jury's determination that Petitioner's belief that self-defense was necessary was, ultimately, unreasonable, the only point at issue. The jury's finding could reasonably have been based upon the other evidence at trial, including the testimony of three eyewitnesses and the absence of a gun in the Woods's van. Without showing fundamental unfairness or alleging a constitutional violation, these claims alleging violations of state law alone are noncognizable on federal habeas review.

Respondent argues that these claims are also defaulted in that they were resolved on independent and adequate state grounds, namely that they were forfeited by Petitioner's failure to object at trial or in a post-trial motion. (R. 20, Answer at 21.) The appellate court on direct appeal found these two claims to be waived for this reason. (R. 21-9, Ill. App. Ct. Order at 10-12.) "It is well established that federal courts will not review questions of federal law presented

in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman*, 501 U.S. at 729). A state-law ground is considered "independent" for this purpose "only if the state court actually relied on a state rule sufficient to justify its decision." *Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005) (citation omitted). "[W]hen a state refuses to adjudicate a petitioner's federal claims because they were not raised in accord with the state's procedural rules, that will normally qualify as an independent and adequate state ground for denying federal review." *Woods*, 589 F.3d at 373. A finding of waiver or forfeiture by the state court is enough to establish an independent and adequate state ground. *Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009). To avoid waiver in Illinois, "a defendant must both contemporaneously object at trial and include the specific alleged error in a written post-trial motion." *People v. Ramos*, 742 N.E.2d 763, 769 (Ill. App. Ct. 2000); *see also Miranda*, 394 F.3d at 995 (noting that "the rule requiring that all issues for appeal be preserved in a written post-trial motion is solidly established in Illinois law" (quoting *White v. Peters*, 990 F.2d 338, 340 (7th Cir. 1993))). Thus, a petitioner who failed to raise an issue both at trial and in a post-trial motion has waived that issue and cannot raise it in his habeas petition. *Miranda*, 394 F.3d at 997.

There is no dispute that Petitioner failed to contemporaneously object at trial to evidence of the destroyed van or the lay witness testimony of Trafton. Although Petitioner did raise claim one in a *pro se* motion to dismiss, (R. 21-1, Mot. to Dismiss at 191-93), the failure to object at trial and failure to raise claim one in a post-trial motion is sufficient to waive the claim under Illinois law. *Ramos*, 742 N.E.2d at 769. Further, it is not the place of this Court to reopen and reevaluate state court judgments resting upon adequate and independent state grounds. *Johnson*,

559 F.3d at 752. Thus, since the appellate court denied claims one and two on adequate and independent state grounds, the claims are procedurally defaulted. Therefore, these claims are denied.

## II. Claim Three

Petitioner next claims that the trial court's decision to allow certain rebuttal evidence, concerning the absence of gunshot residue on Woods's hands and the use of the same gun to commit other shootings, deprived him of the right to a fair trial. (R. 1, Pet. at 8.) Respondent fails to acknowledge the fair trial element of Petitioner's claim, arguing that claim three is noncognizable because it challenges a state law evidentiary ruling. (R. 20, Answer at 23-24.)

Although Petitioner does appear to raise a cognizable federal claim, this claim is procedurally defaulted. Petitioner objected at trial and moved for a new trial on this basis, (R. 21-3, Mot. for New Trial at 18), and presented it to the appellate court on direct appeal, (R. 21-10, Def.'s Br. at 43-48). After the appellate court rejected this argument, however, Petitioner abandoned the issue in his PLA.[7] (R. 21-14, PLA at 3.) Further, Petitioner did not raise claim (3) in his state collateral review. By failing to present the claim at each level of the state appellate process, he procedurally defaulted it for the purposes of the present petition. *Byers*, 610 F.3d at 985.

---

[7] Petitioner did reraise claim three in his second PLA. (R. 21-20, PLA at 2.) However, the Illinois Supreme Court denied Petitioner's first PLA, remanding for the limited purpose of examining Petitioner's claims of ineffective assistance of counsel. (R. 21-13, Ill. Order at 1-2.) Because this remand was to investigate a particular issue, subsequent appeals of the trial court's examination of ineffective assistance claims were not the proper setting to raise unrelated evidentiary errors at trial. *In re Alex V.*, No. 2-14-0487, 2014 WL 5112569, at *2 (Ill. App. Ct. 2014) (holding that trial courts "lack the authority" to exceed the scope of the remand and any other order is "void for lack of jurisdiction" (citation omitted)). Although Petitioner did present this argument to each level of the state courts, he did not do so in one complete round; his second PLA was an appeal of the ineffective assistance determination and not of his conviction itself.

14

Petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice, or by showing that the Court's failure to consider the claim would result in a fundamental miscarriage of justice. *Smith*, 598 F.3d at 382. Petitioner does not specifically address whether he can establish cause and prejudice to excuse his default. Given his *pro se* status, the Court has considered whether he could advance an argument based on his appellate counsel's failure to assert a federal claim on this ground as cause to excuse his default. "Attorney error rising to the level of ineffective assistance of counsel can constitute cause to set aside procedural default." *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). However, the exhaustion doctrine requires that an ineffective assistance claim be presented to the state court as an independent claim before it may be used to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). If the ineffective assistance claim was itself not properly exhausted in state court, the petitioner will be considered "fully defaulted." *Dellinger v. Bowen*, 301 F.3d 758, 766-67 (7th Cir. 2002). Although Petitioner did allege ineffective assistance of appellate counsel on collateral review, he did not allege ineffectiveness in abandoning this claim on appeal to the Illinois Supreme Court. Accordingly, the Court finds that Petitioner is fully defaulted with respect to this claim.

Petitioner also does not directly argue that failing to consider this otherwise-defaulted claim would result in a fundamental miscarriage of justice. However, in light of Petitioner's claim of actual innocence and the liberal construction this Court accords to *pro se* petitions, the Court has considered whether the miscarriage of justice application would apply. A petitioner claiming actual innocence must present newly discovered evidence "that was not presented at trial," *Schlup*, 513 U.S. at 324, and that makes it "more likely than not that no reasonable juror would have convicted" the petitioner. *Id.* at 329. Petitioner cannot meet this high standard.

Although Petitioner admits to shooting Woods and Sheena, he does claim actual innocence based on self-defense. *See Britz v. Cowan*, 192 F.3d 1101, 1103 (7th Cir. 1999) ("One can kill yet be innocent of murder . . . [such as] when the accused murderer has an affirmative defense of insanity. . . . If acquitted on grounds of insanity, he is actually innocent."). However, the evidence he presents as "newly discovered," primarily the affidavit from Cole, is purely cumulative and thus cannot establish a fundamental miscarriage of justice. The facts alleged in Cole's affidavit are nearly identical to those testified to by Petitioner at trial. (R. 21-4, Aff. of Corzell Cole at 148-51.) The affidavit described a history of violence between the two families and did not differ from Petitioner's account of the shooting in any substantial respect. (*Id.*) As this evidence is cumulative of what was presented at trial, it cannot undergird a fundamental miscarriage of justice argument. Further, as the affidavit serves only to corroborate Petitioner's testimony with that of a codefendant currently serving a sentence based on the same events, its inclusion in the evidence would not probably preclude any rational juror from finding Petitioner guilty. Petitioner also argues in his third PLA that various reputation evidence and evidence of past encounters between the Woods and Guy families constituted newly discovered evidence establishing actual innocence. (R. 21-25, PLA at 35-37.) However, this evidence had been discovered at trial; even if Petitioner's trial counsel did not choose to present certain evidence, Petitioner provided them with this information, not least through his *pro se* motions, and his counsel made a strategic decision not to pursue it. Further, it is not the case that no reasonable juror could have convicted in the face of this evidence. This evidence only tends to show that Petitioner was fearful of Woods and his family. By convicting him of second-degree murder, which requires a belief that self-defense is justified even if unreasonable, the jury already credited Petitioner's claim to have been fearful. Additional evidence that Petitioner believed self-

defense was necessary does not make it more likely than not that a jury would find this belief to be reasonable, under the circumstances, in the same way that discovering a gun wielded by Woods would. *See People v. Miller*, No. 1-12-1828, 2014 WL 2854809, at *12 (Ill. App. Ct. 2014) (denying motion claiming actual innocence where the new evidence "failed to support defendant's theory of self-defense"). Because there was no cause and prejudice or fundamental miscarriage of justice, claim three is procedurally defaulted and this Court cannot review it on the merits.

### III. Claim Four

Petitioner claims that his case should be remanded for an inquiry into his allegations of ineffective assistance of counsel, which the trial judge ignored despite his submission of a *pro se* post-trial motion. (R. 1, Pet. at 8.) Respondent argues that this claim alleges an error of state law, as Petitioner's argument is essentially that the trial court failed to comply with *People v. Moore*, 797 N.E.2d 631 (Ill. 2003), and *People v. Krankel*, 464 N.E.2d 1045 (Ill. 1984). (R. 20, Answer at 24.) Because this claim does not raise ineffective assistance itself, but instead a failure of the state court to follow state court procedures, it has no federal purchase. Therefore, it is noncognizable on federal habeas review.[8]

### IV. Claim Five

Petitioner argues that the trial judge abused his discretion by failing to appoint new counsel to represent him in his claims of ineffective assistance of counsel. (R. 1, Pet. at 9.) Respondent appears to misconstrue Petitioner's claim, supposing it to challenge the court's

---

[8] Further, the trial court has already had such a hearing. (R. 21-8, Tr. at 224-349.) When the Illinois Supreme Court heard this claim on direct appeal, it remanded Petitioner's case to hold a *Krankel* hearing. (R. 21-13, Ill. Order at 2.) Whatever the merits of the underlying ineffective assistance of counsel claim, the particular error alleged here, that this issue had been ignored, was remedied by that hearing.

denial of Petitioner's *pro se* post-trial motion. (R. 20, Answer at 24.) Instead, Petitioner

challenges the failure to appoint counsel at that hearing, the same issue he presented to the

appellate court and the Illinois Supreme Court on appeal from the trial court's denial. (R. 21-16,

Def.'s Br. at 4, R. 21-20, PLA at 2.) As alleged more fully in those appeals, Petitioner contends

that under Illinois law, new counsel should be appointed when a defendant alleging ineffective

assistance shows "possible neglect of the case." (R. 21-16, Def.'s Br. at 22 (citing *People v. Nitz*,

572 N.E.2d 895 (Ill. 1991); *Krankel*, 464 N.E.2d 1045) Ultimately, as this claim deals entirely

with the protections afforded under state law, this claim is noncognizable in a § 2254 motion.

### V. Claims Six and Seven

Petitioner presents three distinct claims of ineffective assistance of trial counsel in his

Petition: (1) that trial counsel was ineffective in failing to sufficiently present Petitioner's

knowledge of Woods's violent reputation;[9] (2) that trial counsel was ineffective for failing to

secure Cole's testimony; and (3) that trial counsel was ineffective for failing to investigate

"Petitioner's off record allegation that Petitioner made them aware of." (R. 1, Pet. at 9-10.)[10]

Respondent argues that all three claims are meritless because the failure to present specific

pieces of cumulative evidence at trial does not render counsel ineffective. (R. 20, Answer at 26-

28.)

---

[9] Although this claim is not elaborated in the Petition, in light of previous motions it appears that
Petitioner takes issue with trial counsel's failure to properly utilize certain witnesses or elicit
specific testimony at trial. (R. 1 at 9; *see also* R. 21-5, *Pro Se* Post-Conviction Pet. at 196; R. 21-
22, Motion for Leave to Withdraw at 20.)

[10] The Court assumes that this claim refers to the constellation of facts and investigations
contained in a portion of his post-conviction petition entitled "OFF RECORD Factual
Allegations." (R. 21-5, *Pro Se* Post-Conviction Pet. at 205.) This section primarily consists of
accumulated interviews detailing the history of violence allegedly perpetrated by the Woods
family.

18

The standard for evaluating an ineffective assistance claim is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). A defendant must show that: (1) his attorney's performance was deficient; and (2) he was prejudiced by the attorney's deficient performance. *Id.* at 687. To satisfy the first prong, the defendant must show that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. *Strickland* instructs that in making this determination a court should maintain a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (citation omitted). In essence, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690). To satisfy the second prong, the defendant must demonstrate that there is a reasonable probability that the result of the proceeding would have been different but for counsel's errors. *Strickland*, 466 U.S. at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112. A court need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

The trial court evaluated Petitioner's ineffective assistance claims upon remand from the Illinois Supreme Court.[11] The trial court's investigation of Petitioner's ineffective assistance

---

[11] The trial court was the last court to consider Petitioner's ineffective assistance claims on the merits. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (holding that the proper focus on federal habeas review is "the last *explained* state-court judgment"). On appeal from the trial court's decision, Petitioner only argued that he should have been appointed counsel to represent him in that proceeding. (R. 21-16, Def.'s Br. at 4.) The appellate court reviewed for plain error in

19

claims was not contrary to *Strickland.* The court addressed each of Petitioner's claims of

ineffective assistance of counsel in turn, finding in each case that trial counsel had not performed

deficiently. With regard to the evidence supporting Petitioner's claim of self-defense,

particularly evidence of violence and threats to Petitioner's family, the court recalled limiting the

evidence that could be presented. (R. 21-8, Tr. at 281-82.) Counsel's failure to present evidence

excluded by the judge does not constitute deficient performance. *Stone v. Farley,* 86 F.3d 712,

717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not

constitute ineffective assistance of counsel."). Concerning Cole, the court found both that

counsel had made reasonable efforts to secure Cole's testimony and that, even if Cole had

testified as set forth in his affidavit, it would not have resulted in a different verdict. (*Id.* at 321-

22.) Regarding character and reputation evidence of Woods, the court observed that the rules of

evidence would prevent counsel from presenting such evidence. (*Id.* at 287-88.) With regard to

each of Petitioner's claims, the trial court found that counsel's performance did not fall below

objectively reasonable standards and that which evidence was presented was largely defined by

trial strategy in response to the court's own rulings at trial.

The trial court's determinations, which were affirmed by the appellate court and denied

review by the Illinois Supreme Court, were on the merits of Petitioner's ineffective assistance of

trial counsel claims, were consistent with the governing Supreme Court precedent in *Strickland,*

and were not based on an unreasonable determination of the facts. Thus, the Court may not grant

relief on these claims.

---

the trial judge's decision not to appoint counsel without reaching the merits. (R. 21-15, Ill. App.
Ct. Order.) The Illinois Supreme Court denied Petitioner's PLA without comment. (R. 21-19,
PLA at 1.)

Petitioner further claims that appellate counsel was ineffective for failing to diligently pursue his claims of ineffective assistance of trial counsel. (R. 1, Pet. at 10.) Respondent replies that, because the underlying ineffective assistance of trial counsel claims are meritless, appellate counsel's failure to pursue them was not itself ineffective assistance. (R. 20, Answer at 28.) This claim also fails. Where trial counsel was not ineffective, failure to argue that it was does not constitute deficient performance. *Stone*, 86 F.3d at 717 ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel.").

## VI. Claim Eight

Liberally construing the Petition, Petitioner appears to claim actual innocence of his crimes based on statutory inconsistencies. He argues that he is innocent of second-degree murder because, based on his interpretation of the statutes, this crime requires one to intend to have an unreasonable belief. (R. 1, Pet. at 11-12.) In short, he reads the first-degree murder statute as requiring "intent to kill unlawfully" and the second-degree murder statute, which reduces what would otherwise be first-degree murder because of the mitigating factor of an unreasonable belief in the necessity of self-defense, to require "intent to kill in self-defense." (*Id.* at 12.) Because he did not intend to kill unlawfully, and one cannot intend to kill with an unreasonable belief, he intended to kill in self-defense, which he argues is not an intent that can underlie a criminal offense. (*Id.*) Respondent replies that the statutes require a defendant to "intend a result (the death of a victim) but unreasonably believe that this result is necessary." (R. 20, Answer at 33.)

Petitioner's claim of actual innocence is beyond the scope of federal habeas review for two reasons. First, relying as it does on his interpretations of state statutes, this claim concerns only state law and thus this Court cannot address its merits. Second, even if this claim were not

noncognizable under federal habeas review, actual innocence is not a free-standing constitutional claim that can support a habeas petition. *Herrera v. Collins*, 506 U.S. 390, 401 (1993).

### VII. Claims Nine Through Fifteen

Petitioner admits that he has not fairly presented claims (9) through (15) to the state courts; in his Petition, he indicates that he intends to present them in a successive post-conviction petition. (R. 1, Pet. at 11.) Further, immediately after filing his Petition he moved the Court for a stay until his then-pending petition for relief from judgment and then-planned successive post-conviction petition had been resolved, exhausting these claims. (R. 4, Mot. to Hold and Stay in Abeyance at 1-3.) However, as Respondent indicates, Petitioner's petition for relief from judgment was denied as untimely and improperly served. (R. 21-27, Ct. Order at 1-3.) As to Petitioner's plan to file a successive post-conviction petition in state court, Respondent asserts that no such petition has been filed and that none will be entertained under state law. (R. 20, Answer at 38.) Specifically, 725 Ill. Comp. Stat. 5/122-1(f) limits prisoners to one post-conviction petition unless they can show cause and prejudice. Because claims nine through fifteen were all available to Petitioner on direct appeal and at the time of his first post-conviction petition, he will not be able to show "an objective factor that impeded" his ability to raise the claim earlier. 725 ILL. COMP. STAT. 5/122-1(f)(1). Lacking any evidence to the contrary, the Court assumes that there are no further state remedies available to Petitioner.

Upon review of Petitioner's multifarious *pro se* petitions throughout the life of this case, the Court has discovered that each of these claims, with the exception of claim twelve, was raised by Petitioner shortly after his trial. Claims (9), (10), (13), and (15) appear to have been first raised, in some form, in Petitioner's "Motion to Dismiss, Vacate, or Reverse Conviction of Attempted First Degree Murder." (R. 21-3, Mot. to Dismiss, Vacate, or Reverse at 40-45.)

Claims (11) and (14) seem to have been first raised in Petitioner's "Motion to Reconsider Sentence." (R. 21-3, Mot. to Reconsider Sentence at 73-75.) The Court has not located claim (12) in any of Petitioner's previous *pro se* motions. Even though these claims were presented below, however, Petitioner failed to fairly present them to each level of the state court in one complete round of review. These claims were abandoned on direct appeal; they were not pursued through Petitioner's second PLA to the Illinois Supreme Court, (R. 21-20, PLA); he did not raise them in his *pro se* post-conviction petition, (R. 21-5, *Pro Se* Post-Conviction Pet. at 140-219), nor did he defend them in his response to his appointed appellate counsel's *Finley* motion to withdraw, (R. 21-23, Pet'r's Resp.), nor did he present them to the Illinois Supreme Court in his third PLA, (R. 21-25, PLA). Because these claims were not fairly presented through any one round of state court review, they are procedurally defaulted. Petitioner has not identified any "objective factor external to the defense" preventing him from pursuing these claims, as required to show cause for purposes of avoiding procedural default, nor does any such factor seem to have been presented, as he did not even pursue them himself when proceeding *pro se*.

## VIII. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability, a habeas petitioner "must make a substantial showing of the denial of a constitutional right" by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted); *see also* 28 U.S.C. § 2253(c)(2). When a claim is resolved on procedural grounds, a

district court can grant a certificate of appealability "only when the proverbial reasonable jurist would find both the district court's procedural decision and the merits of the claim debatable." *Peterson v. Douma*, 751 F.3d 524, 530-31 (7th Cir. 2014).

As fully explained above, Petitioner's claims are either procedurally defaulted, non-cognizable, or without merit under AEDPA standards. Nothing before the Court suggests that reasonable jurists would debate the outcome of the Petition or find a reason to encourage Petitioner to proceed further. Accordingly, the Court will not issue Petitioner a certificate of appealability.

## CONCLUSION

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus (R. 1) is DENIED and the Court declines to issue a certificate of appealability.

ENTERED:

Chief Judge Rubén Castillo
United States District Court

**Dated: October 19, 2015**